IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOUIS S. SADLER and
MARGARET A. SADLER,

    Plaintiffs,

v.                                            Civ. No. 08-670 RLP/LFG

PACIFIC INDEMNITY COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on cross motions for summary judgment, filed pursuant to Fed.R.Civ.P. 56. Plaintiffs bring their Complaint for Declaratory Judgment and For Damages for Unfair Insurance Practices, Bad Faith , Breach of Fiduciary Duties, Breach of Insurance Contract and Unfair Trade Practices pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship) and 28 U.S.C.§ 2201(a) (declaratory judgment).

<u>FACTS</u>

For the period March, 2003 through March, 2004, Plaintiffs were the named insureds under a personal liability policy issued by Defendant (the "Policy"). Plaintiffs executed a "Seller's Property Disclosure Statement" for the purposes of selling their residence, the insured property. In September, 2003 Plaintiffs entered into a Purchase Agreement with Chester and LeeAnne Hine who desired to purchase the residence. The Hines closed on the purchase in October, 2003. Complaint [Doc. 1], ¶¶ 1-10. The Policy was cancelled by the insureds on October 8, 2003, presumably shortly after the Hines closed on the property that same month. [Doc. 42-4]

In May, 2005 the Hines sued the Sadlers in state court. [Doc. 36-3] The Hines' Complaint for Breach of Contract, Misrepresentation, and Damages alleged there were undisclosed serious defects with the home. The Sadlers' Policy provides personal liability coverage and the Sadlers tendered their defense of the Hines' lawsuit to Defendant. Defendant declined to defend or indemnify, stating that the Policy did not cover the claims the Hines made against the Sadlers. Thereafter, the state court case proceeded to judgment and the court awarded the Hines $475,460.83, with interest accruing at the rate of 15% per annum. Sadler Complaint, ¶ 21 [Doc. 1]

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Public Service Co. of Oklahoma v. Burlington Northern Railroad Co.*, 53 F.3d 1090, 1096 (10th Cir. 1995) (quoting Fed.R.Civ.P. 56(c)). State law determines the substantive issues in a diversity case. *Id*.

The relevant facts in this case are undisputed. The issue is whether the allegations in the Hines' complaint triggered the duty to defend. Plaintiffs argue that the claims of negligent and innocent misrepresentation were sufficient to trigger the duty to defend. Defendant argues that even with those claims, the policy clearly does not cover economic damages.

## DUTY TO DEFEND

Under New Mexico law, an insurance company has a duty to defend if the facts as alleged in the underlying complaint "tend to show an occurrence within the coverage."

2

*Foundation Reserve Ins. Co. v. Mullenix*, 642 P.2d 604, 605 (N.M. 1982) (quoting *American Employers' Ins. Co. v. Continental Cas. Co.*, 512 P.2d 674 (1973)).  "The duty to defend can arise from the allegations of the complaint or from known but unpleaded facts that bring the claim arguably within the scope of coverage." *Southwest Steel Coil, Inc. v. Redwood Fire & Casualty Ins. Co.*, 148 P.3d 806, 812 (N.M. Ct. App. 2006).  The Court therefore begins with an examination of the Hines' Complaint and the Sadlers' Policy.

<u>The Hines' Complaint</u>

The Hines' Complaint alleges that Sadler was a licensed general contractor, that he represented to them that the residence was in "great" condition and that there were no problems or issues with the residence.  <u>Hines' Complaint</u>, ¶¶ 8-10.  The Complaint alleges that after closing, an inspection revealed the following defects: the carpets and padding underneath were saturated with dog urine; the roof either leaked now or in the past and the water marks on the walls were painted over; exterior water had drained into the sunken living room; the garage had been remodeled by Sadler without the proper building permits and the City "red tagged" the area because the heaters had not been properly ventilated; and that the interior walls were infested with mice, feces, nests, and "mice debris."  *Id.* ¶¶ 12-14.  The Complaint alleges that the foregoing defects prevented the Hines from occupying the property and caused them economic damages.  *Id.* ¶ 15.  The Complaint alleges, in three counts, that the misrepresentations were intentional and fraudulent, or negligent, or innocent.  *Id.*, Counts I, II, and III.

<u>The Sadler's Policy</u>

The pertinent provisions of the Policy are the definitions of "occurrence" and "property damage."  An "occurrence" is necessary to trigger coverage, and an "occurrence"

3

is defined as:

> a loss or accident to which this insurance applies occurring within the policy period. Continuous or repeated exposure to substantially the same general conditions unless excluded is considered to be one occurrence.

Policy at Page A-1 [Doc. 42-2]

"Property damage" means "physical injury to or destruction of tangible property, including the loss of its use." Policy at Page T-1 [Doc. 42-2]

Plaintiffs argue that the Hines' Complaint's inclusion of negligent or innocent misrepresentations constitutes an "occurrence" as defined in the Policy. Plaintiffs further claim that the definition of "property damage" means that they can recover for (1) physical injury to, or (2) destruction of, or (3) loss of use of tangible property. Therefore, they argue, because the Hines' Complaint alleges an "occurrence" (the innocent or negligent misrepresentations) and "property damage" (stained walls, water damage, and loss of use), the Defendant's duty to defend was triggered under the Policy.

Defendant argues that the harm alleged is economic in nature and is not covered by the Policy. Further, Defendant states that "loss of use" must be accompanied by physical damage and is not a covered event in and of itself.

## ANALYSIS

Neither the Court nor the parties have found any New Mexico case law on point in construing these policy terms; *i.e.*, whether a misrepresentation is an "occurrence" within the meaning of the Policy; and whether "loss of use" must be accompanied by injury or destruction to property. When a federal court attempts to predict how a state's highest court would rule, it is "free to consider all resources available, including decisions of New

4

Mexico courts, other state courts and federal courts, in addition to the general weight and trend of authority." *Federal Deposit Ins. Corp. v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000) (citing *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994)).

New Mexico courts follow the standard general rules of construction for insurance policies. Insurance policies are construed as a whole and the court determines "whether ambiguities exist in the language of the contract." *Davis v. Farmers Ins. Co.*, 142 P.3d 17, 20 (N.M. Ct. App.) (citing *Rummel v. Lexington Ins. Co.*, 945 P.2d 970 (N.M. 1997), *cert. denied*, 142 P.3d 361 (2006). Undefined terms are given their "usual, ordinary, and popular" meaning, such as found in a dictionary." *Id.* (quoting *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111 (N.M. 2006)). "A split in legal authority may be indicative of an ambiguity in the policy, but does not establish one." *Id.* Only upon the court's determination that an ambiguity exists will the policy be liberally construed in favor of the insured. *Id.* (citing *Battishill*, *supra*). Moreover, the court must not "strain or torture" the language in order to "create an ambiguity." *Id.* (citation omitted).

<u>Whether a misrepresentation is an occurrence as defined in the policy</u>

As shown previously, an "occurrence" is a loss or an accident to which the insurance applies. The Policy covers losses due to personal injury and property damage, but excludes economic damages. The allegations in the Hines' Complaint all go to Plaintiffs' misrepresentations and it was those misrepresentations that caused economic harm to the buyers. A majority of courts addressing this same issue have reached this conclusion. *See Generally* H. Brent Brennenstuhl, Annotation, "Negligent Misrepresentation as 'Accident' or 'Occurrence' Warranting Insurance Coverage," 58 A.L.R.5th (1998 & 2008 Supp.).

5

In *United States Fidelity and Guaranty Co. v. Dealers Leasing, Inc.*, 137 F.Supp.2d 1257 (D. Kan. 2001) the defendant argued that the insurer, USF&G, was required to defend the underlying lawsuit because the complaint against the defendant included claims for negligence and negligent misrepresentation. *Id.* at 1260. USF&G argued that the policy only covered damages caused by an occurrence and that the misrepresentations did not cause the damages listed in the complaint. *Id.* The court agreed that Kansas law would support USF&G's arguments, citing *Bush v. Shoemaker-Beal*, 987 P.2d 1103 (Kan. Ct. App. 1999). *Id.* The *Bush* case relied on *State Farm Fire & Cas. Co. v. Brewer*, 914 F.Supp. 140, 142 (S.D. Miss. 1996).

Both *Bush* and *Brewer* concerned the seller-homeowner's misrepresentation that the homes were free from termite infestation. The courts reasoned that the damage to the home was caused by the termites, not the misrepresentations, and that the only damage flowing from the misrepresentations were economic and therefore not covered by the policies. *Id.* (citing *Bush*, 987 P.2d at 1104; *Brewer*, 914 F. Supp. at 142-43).

Finally, in *Aluise v. Nationwide Mut. Fire Ins. Co.*, 625 S.E.2d 260 (W.Va. 2005), the court found that where the defects alleged predate the concealment and misrepresentations, the damages are pecuniary and not covered by the policy.

> Based upon the overwhelming authorities, we now hold that, absent policy language to the contrary, a homeowner's policy defining "occurrence" as "bodily injury or property damage resulting from an accident" does not provide coverage for an insured homeowner who is sued by a home buyer for economic losses caused because the insured negligently or intentionally failed to disclose defects in the home.

*Id.* at 268. *Accord Hartford Ins. Co. v. Wylie*, 369 F. Supp.2d 1033, 1039 (E.D. Mo. 2005) (no duty to defend or indemnify where defects in property existed when negligent or intentional misrepresentations were made to buyer).

This Court agrees with the majority of courts that hold in cases such as this one, where material misrepresentations have been made about the condition of the property, such misrepresentations are not the "cause" of any physical damage to the property and therefore only result in economic loss, a loss not covered under the Policy. The Policy language is not ambiguous. Based on the foregoing discussion, the Court predicts that New Mexico's courts would follow this analysis with similar facts and a similar policy of insurance.

<u>Whether "loss of use" must be accompanied by physical damage</u>

The Court has found several cases from other jurisdictions directly on point. In *Ehlers v. Johnson*, 476 N.W.2d 291 (Wis. Ct. App. 1991), the insureds were accused of misrepresenting lot lines in the sale of their property. When they were sued, they tendered their defense to their carrier, which declined. They then filed a third party complaint against the carrier, claiming it was obligated to defend and indemnify.

The policy language is virtually identical to the Policy in the instant case and the counter-plaintiffs made the same argument as Plaintiffs herein, *i.e.*, that "including loss of use" meant "all tangible property, not just physically injured or destroyed property." 476 N.W.2d at 564.

> We disagree. We conclude that the clause "including loss of use of this property" is unambiguous. The only reasonable meaning of the clause is that it defines property damage to include loss of use damage that accompanies physical injury or destruction.

*Id.*

In *Mutlu v. State Farm Fire & Cas. Co.*, 785 N.E.2d 951 (Ill. App. Ct. 2003), the plaintiff sued his insurance carrier for breach of its duty to defend and indemnify. The

lawsuits that gave rise to Plaintiff's claims against his carrier involved hot water deficiencies in the condominium complex where he lived.  The policy definition of "property damage" is identical to the one in the case at bar. The carrier refused to defend because there was no property damage.  The *Mutlu* plaintiff argued that because the counterclaim against him alleged "the loss of use of hot water," the policy provided coverage.  *Id.* at 425-26.

This was a case of first impression in Illinois and the court looked to other states for guidance.  *Id.* at 426.  The court noted that other jurisdictions had defined the loss of use in a property damage clause to require physical damage.  *See id.* at 428 (citing *Coulter v. CIGNA Property & Casualty Cos.*, 934 F. Supp. 1101 (N.D. Iowa 1996)); *Continental Ins. Co. v. Bones*, 596 N.W.2d 552 (Iowa 1999); *Ehlers*, *supra*; and *Dixon v. National American Ins. Co.*, 411 N.W. 2d 32 (Minn.App. 1987).

In *Mutlu* the court cited to two cases which did not require physical damage to the property, *American Home Assurance Co. v. Libby-Owens-Ford Co.*, 786 F.2d 22 (1st Cir. 1986) and *Gibson v. Farm Family Mutual Ins. Co.*, 673 A.2d 1350 (Me. 1996).  The *Muflu*, *Coulter*, and *Bones* courts each rejected the conclusions reached in these two opinions. The *American Home* analysis was rejected because the court created an exception for loss of use damages based on alternative language in the policy, even though it acknowledged that some physical damage to tangible property must be shown to trigger coverage.  786 F.2d at 25.

In *Gibson*, the court merely noted that contracts of insurance are construed against the insurer.  673 A.2d at 1353.  This conclusion was rejected by the other courts because there was no finding in *Gibson* that the policy's language was ambiguous.  *See, e.g.*, *Mutlu*, 785 N.E.2d at 431; *Bones*, 596 N.W.2d at 557-58.

This Court agrees with those courts that found that "loss of use" of tangible property requires physical damage or destruction. The court also finds that the policy provision at issue -- "Property damage" means "physical injury to or destruction of tangible property, including the loss of its use" -- is neither ambiguous nor susceptible of two meanings.

Based on the foregoing authorities, the Court finds that New Mexico courts would follow the majority of jurisdictions and find that the policy language in this case means that the "loss of use" must be accompanied by physical damage. As one court so succinctly stated:

> If the loss of use clause were interpreted as the [insureds] would have, *i.e.*, as any nonphysical injury to tangible property, the definition of property damage would effectively read: "physical injury to . . . tangible property, including non-physical injury." We reject such a contradictory reading.

*Ehlers*, 476 N.W.2d at 564.

Accordingly, the Court finds that summary judgment should be granted in favor of Defendant and further finds that Plaintiffs' Complaint should be dismissed with prejudice.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. 36] is **granted** and that Plaintiff's Motion for Partial Summary Judgment [Doc. 30] is **denied**; and

IT IS FURTHER ORDERED that Plaintiff's Motion to Supplement Response to Summary Judgment Brief [Doc. 60] is denied as moot; and

IT IS FURTHER ORDERED that this case be dismissed with prejudice.

IT IS SO ORDERED.

_____
Richard L. Puglisi
United States Magistrate Judge

9